## COMMONWEALTH v. G. B. DELAMATER ET AL.

PETITIONS OF DEFENDANTS FOR WRITS OF CERTIORARI TO REMOVE INDICTMENTS INTO THE SUPREME COURT FROM THE COURT OF QUARTER SESSIONS OF CRAWFORD COUNTY.

Argued June 4, 1891—Decided November 9, 1891.
[To be reported.]

1. The Supreme Court has power to issue a writ of certiorari to the Court of Quarter Sessions of any county in the state, for the removal of an indictment pending therein, and all proceedings on such indictment, into the former court, to the end that the same may be tried in some other county: Commonwealth v. Balph, 111 Pa. 365.

2. Such power, however, is to be exercised with extreme caution, and only in a clear case. It must be exercised in aid of the administration of justice, not to defeat or needlessly embarrass it; and it must clearly appear that its exercise is necessary, in the particular case, to secure to the defendant an impartial trial.

3. In this instance, the writ being prayed for solely on the ground that it was impossible to secure an impartial jury in the county where the indictment was found, by reason of excitement and prejudice against the defendants, and the Supreme Court not being satisfied that such was the fact, the application was refused: Commonwealth v. Balph, 111 Pa. 365, distinguished.

4. The fact that, in a prosecution against a banker for receiving deposits while insolvent, with knowledge of his insolvency, the money was specified in the charge as the property of the county, and hence all the taxpayers of the county were in a sense interested in the case, is not of itself a sufficient reason for removing the indictment, for trial in another county.*

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

* See, as to a change of venue in civil cases, Philadelphia v. Railway Co., 143 Pa. 444.

Nos. 50–58 May Term, 1891, Sup. Ct.; court below, Nos. 15–17 February Term 1891 and 6–9, 25, 26 May Term 1891, Q. S.

On May 8, 1891, George B. Delamater, George Wallace Delamater and T. A. Delamater filed in the Supreme Court, to No. 50 May Term 1891, a petition for a writ of certiorari to the Court of Quarter Sessions of Crawford county.

The petition recited an information, made against the petitioners before a justice of the peace by the county commissioners of Crawford county, on January 9, 1891, and an indictment in several counts based thereon; the latter, returned by the grand jury as a true bill on February 11, 1891, to No. 15 February Term 1891, of the Court of Quarter Sessions of said county, charging that the defendants, being engaged in carrying on a private bank at Meadville, under the firm name of Delamater & Co., and being insolvent, did with knowledge of their insolvency receive from Henry M. Miller, treasurer of the county of Crawford, certain sums of money the property of said county, as deposits in their said bank, on certain specified dates; contrary to the form of the act, etc. The petition then averred as follows:

" That on the thirteenth day of February, 1891, the trial of said indictment was continued by the court; that the said case is for trial on Monday, May 11, 1891, and your petitioners are advised that it is the intention of the prosecution to force said case for trial at that time.

" That there is great and undue excitement and prejudice existing in this case against your petitioners, not only on the part of the public generally, but upon the part of the jurors who would be empaneled to try the cause; each and every one being interested and prejudiced against your petitioners by the repeated allegations and representations of the prosecutors, and charged in their complaint and in the indictment in this case, that it is the taxpayers' and jurors' money which has been used by the petitioners, and the recovery of the same will enter into the deliberations of the jury and greatly prejudice their minds.

" That there were over a thousand individual depositors in the said bank of Delamater & Co., the banking office of the defendants complained of in this case, and these resided in nearly every township and district in said county; and these depositors

### Statement of Facts.

are greatly excited and prejudiced against your petitioners, by reason of the failure of said banking house, under a financial stringency and a sudden and unlooked for pressure upon the bank, to meet their claims. This excitement and prejudice extends from said depositors to their neighbors, relatives and friends in every district throughout the county, and has tended greatly to create and extend the hostility and prejudice against your petitioners, and to inflame and excite the citizens throughout the county against the defendants; and to such an extent as to render it impossible for the petitioners to have a fair trial in said county.

" In connection with these allegations, inflammatory articles against your petitioners have been printed in the public newspapers published in and circulated throughout the county, increasing the excitement and prejudice against your petitioners; and to such an extent as will prevent a fair and impartial trial of the case in this county.

" In support of these representations, your petitioners respectfully present the sworn statements of a large number of citizens and taxpayers residing in different parts of the county, and desire that the same be considered as part of this petition.

" That if your petitioners are tried in Crawford county, they would be tried by a jury selected from the body thereof, who, by reason of the excitement and interest as taxpayers, are greatly prejudiced against your petitioners; that your petitioners aver that a fair and impartial trial cannot be had before a jury of Crawford county, where said interest, excitement and prejudice exist; that no relief is afforded your petitioners by the provision of any act of assembly; there being no provision made, as they are advised, for a change of venue in a case like the present, which is a misdemeanor and not a felony.

" At the term of Court of Quarter Sessions to which said information was returnable, the said case was continued and proceedings were had looking to a settlement of the affairs of said bank, and your petitioners were led to believe from time to time that the case would not be called for trial at the present term, but would be continued and eventually discontinued; that only within a very few days last past, they have been authoritatively advised that the case would be pressed for trial on Monday next; and unless some relief be afforded by this Honorable Court,

your petitioners will be forced to trial under the excitement and prejudice described.

"Wherefore your petitioners, protesting that they are not guilty of the offences charged in said indictment, respectfully submit that they are willing, ready and anxious to meet the trial of the issues involved, in any district removed from the great excitement and prejudice existing in this county. Therefore, your petitioners pray your Honorable Court to issue a writ of certiorari directed to said Court of Quarter Sessions of the Peace in and for the county of Crawford, directing said court to forthwith certify to this Honorable Court the record and all proceedings in relation to said case of the Commonwealth v. George B. Delamater, George W. Delamater and T. A. Delamater, at No. 15 February Term 1891, of said court, and that upon return of said writ, your honors will proceed in accordance with law to the trial, decision and determination of said case; and for such other and further relief as to your honors shall seem meet and the circumstances of the case may require."

The foregoing petition was verified by the affidavit of the petitioners, and accompanied with affidavits of eighteen citizens of Crawford county, to the effect, in substance, that there was undue excitement against the defendants throughout said county, especially among the taxpayers and jurors likely to be empaneled to try the case, and such great prejudice that, in the opinion of the affiants, a fair and impartial trial could not be had therein.

On the filing of the petition, the Supreme Court made the following order:

PER CURIAM:

The petition of G. B. Delamater and others, and affidavits, having been presented and considered, it is ordered that a rule to show cause why a writ of certiorari should not be issued to remove the record, indictment and proceedings in the above case into this court, be granted, returnable to the first day of the next term in the Middle District, at Harrisburg; a copy of this rule to be served upon the district attorney of Crawford county.

Mr. Justice STERRETT dissented from the order, on the ground that no application had been made to the Court of Quarter Sessions for the continuance of the cause.

Subsequently, George B. Delamater, G. W. Delamater and T. A. Delamater filed to Nos. 52, 54, 55, 57 May Term 1891, Sup. Ct., other petitions, similar in form, praying for writs of certiorari to remove indictments against the petitioners, at No. 17 February Term, and Nos. 7, 8, 25 May Term 1891, of the Court of Quarter Sessions of Crawford county, wherein they were charged with receiving deposits at their bank aforesaid from divers individuals, after becoming insolvent and with knowledge of their insolvency. Like petitions were filed, also, by Victor M. Delamater to Nos. 51, 53, 56, 58 May Term 1891, Sup. Ct., praying for the removal of indictments against the petitioner, at No. 16 February Term and Nos. 6, 9, 26 May Term 1891, of said Court of Quarter Sessions, charging him with receiving, as cashier of the bank aforesaid, deposits from certain individuals respectively, with knowledge that Delamater & Co. were insolvent. With these petitions were filed additional affidavits of fifty-eight citizens of Crawford county, tending to show the existence of excitement and prejudice against the defendants on the part of the people of said county; copies of newspaper publications in the Morning Star, a paper published at Meadville, containing comments unfavorable to the defendants, it being averred in the petitions that many similar publications had been made in the newspapers of the county; and a copy of an anonymous threatening letter addressed to G. W. Delamater, attached to an affidavit averring that it was received through the post-office on May 10, 1891, and that many similar letters had been received by G. W. Delamater within the last few months. On the filing of these petitions, the court made orders granting rules to show cause similar to the order made at No. 50 May Term.

On the return day of the rules, the district attorney of Crawford county filed an answer denying that there existed such excitement and prejudice against the defendants, on the part of the citizens of Crawford county, as would prevent the securing of a fair and impartial jury, and a fair and impartial trial; averring that the tone of the newspapers of said county had been generally fair and conservative, that the majority of them were friendly to the defendants, and that the circulation of the Morning Star was confined chiefly to Meadville and its vicinity; that the failure of Delamater & Co caused a loss of several

thousand dollars to the taxpayers of the entire state, and the prosecutions had been discussed and commented on by the press throughout the state; and that the applications of the defendants were not made in good faith, for the reasons stated in their petitions, but in the hope that an order for the trial of the cases elsewhere than in Crawford county, would result in their abandonment by reason of inability of the prosecutors to bear the expense of such trials.　The answer was accompanied by two hundred and fifty affidavits, made by citizens of Crawford county, denying the allegations of the defendants as to the existence of excitement, etc., and expressing the opinion that an impartial jury could be secured and a fair trial had in that county without difficulty, each affidavit stating the age and occupation of the affiant and the district of the county in which he resided.

*Mr. Joshua Douglass* and *Mr. George A. Jenks* (with them *Mr. A. B. Richmond*), for the petitioners:

1. For over one hundred and fifty years the right of a judge of the Supreme Court to allow the writ of certiorari, to remove an indictment before trial, has been settled beyond any argument.　We have constitutional recognition of it, and three distinct statutes allowing and enforcing it: §§ 11, 13, act of May 22, 1722, 1 Sm. L. 139, which gave to the Supreme Court and its judges all the powers of the Court of King's Bench in England, as was held in Commonwealth v. Nathans, 5 Pa. 125; § 5, article V., constitution of 1790; § 7, act of April 13, 1791, 3 Sm. L. 30; §§ 1, 7, 9, act of June 16, 1836, P. L. 784; Commonwealth v. McGinnis, 2 Wh. 113; § 33, act of March 31, 1860, P. L. 439; Commonwealth v. Simpson, 2 Gr. 439.

2. An examination of the English authorities will show that this writ was the recognized remedy, and was frequently issued on applications similar to the present one: 2 Bac. Abr. 689–691; 4 Bl. Com., 266; 2 Hale P. C., 215, and note; King v. Inhabitants of Nottingham, 2 Lev. 112; Rex v. Harris, 3 Burr. 1332; King v. Inhabitants of Cumberland, 6 T. R. 192; Rex v. Cowle, 2 Burr. 859.　And the same power has been exercised by the supreme courts of other states: People v. Vermilyea, 7 Cow. 137; Boba v. State, 2 Yerg. 178; Nicolls v. State, 2 Southard 539; State v. Judges, 3 Har. & McH. 115.

3. The constitution of 1874 does not repeal the statutes we have cited. It contains no words of this import, and they still stand as part of the law of the state: Allegheny Co. v. Gibson, 90 Pa. 397. By § 3, article V., it expressly re-confers upon the judges of this court jurisdiction over the state, as justices of oyer and terminer and general jail delivery. This paragraph is not to be expunged from the constitution by argument. The powers it confers involve the right to issue the writ of certiorari to remove indictments before trial: Commonwealth v. Nathans, 5 Pa. 125. The provision in § 3, article V., excluding original jurisdiction, does not take away this power. The certiorari is not an original writ. And the doctrine contended for has been finally settled by Commonwealth v. Balph, 111 Pa. 365.

*Mr. George F. Davenport* and *Mr. Wesley B. Best,* District Attorney, (with them *Mr. Thomas Roddy*), for the Commonwealth.

Counsel cited: Commonwealth v. Balph, 111 Pa. 365; Commonwealth v. Simpson, 2 Gr. 439; Commonwealth v. Mickel, 2 Phila. 147.

OPINION, Mr. CHIEF JUSTICE PAXSON:

There are nine of these cases, and they all involve the same principle. Three of the defendants were members of the banking firm of Delamater & Co., and were indicted in the court below, at the instance of a number of prosecutors, for the offence of receiving the money of said prosecutors knowing the bank to be insolvent. In the case No. 15 of February Term, in the court below, to which I shall more especially refer, it is charged that the money so received was the money of the county of Crawford. Four of said cases appear to be against Victor E. Delamater alone, who is charged with the same offences, as the cashier of the bank. A petition in each case was presented to this court, near the close of the term in the Eastern District, praying for the allowance of a writ of certiorari, for the purpose of bringing up the record in order that the venue might be changed by an order of this court. Upon the presentation of the petition we granted a rule to show cause, returnable at Harrisburg, in the Middle District. The case

was heard on the last day of the term, too late to dispose of it
at that time with the care its gravity requires.

The grounds of these applications, briefly stated, are that at
the time of the failure of Delamater & Co. there were over a
thousand individual depositors in said bank; that these deposi-
tors resided in nearly every township and district in said
county, and are greatly excited and prejudiced against the
petitioners by reason of the failure of the said bank; that this
excitement and prejudice extends from said depositors to their
neighbors and friends in every district throughout the county;
that inflammatory articles against the petitioners have been
printed in the public newspapers published in said county;
and that by reason of all these causes the petitioners cannot
have a fair and impartial trial in said county.  In support of
this allegation, we have the sworn statement of the petitioners
and a considerable number of other citizens of Crawford county.
On the other hand, the commonwealth, in answer to the rule
served upon the district attorney, emphatically denies that any
such feeling or prejudice exists against the petitioners as will
prevent a fair and impartial trial, and have furnished us with
the affidavits of a large number of citizens to that effect.
These affidavits exceed in number those presented on behalf of
the petitioners; the age, occupation, and residence of each
affiant is stated, showing that they are scattered over the body
of the county.  The commonwealth further contends that some,
and perhaps the most objectionable, of the alleged inflammatory
articles were published in a small paper of little circulation
and influence, while the majority of the papers of Crawford
county have treated the petitioners with reasonable fairness,
and that some of them are friendly.

There is no question of our power to grant the relief prayed
for.  That was settled in Commonwealth v. Balph, 111 Pa.
365.  But, as was said in that case, " it is a power to be exer-
cised with extreme caution," and, we may add, only in a clear
case.  It must be exercised in aid of the administration of
justice, not to defeat it or needlessly embarrass it.  That the
Balph case differs widely from this in its facts plainly appears
from the following extract from the opinion of the court:

" Without entering into detail, it is sufficient to say that the
case arose out of a conflict of jurisdiction between the Court of

Opinion of the Court.

Common Pleas of Warren county and the Court of Common Pleas No. 2 of Allegheny county, in regard to the appointment of a receiver, culminating in the appointment of such officer by each court, and an attempt by each to enforce its own orders and decrees. So far did this proceed that the court of Warren county discharged upon habeas corpus a person adjudged guilty of contempt by the court of Allegheny county, and who was in custody under an attachment. The petition further averred that a fair and impartial trial before a judge and jury of Warren county could not be had because of the excitement and prejudice existing against them in said county, not only on the part of the public generally, but by the jurors likely to be empaneled in the cause, and the judge before whom the case would be tried."

In the case in hand, the only allegation is that a prejudice exists which may affect the jurors; and the fact that in one of the indictments the county is the prosecutor, and the money lost the county money, was pressed upon us as a reason why the prejudice, if it exists, probably extends to the whole body of taxpayers, including, of course, the jurors. But we are unwilling to believe that such a fact would influence the action of a jury of Crawford county. There are cases constantly being tried, of a quasi public nature, in which jurors, as citizens and taxpayers, are interested to some extent. If such interest would disqualify a juror, cases might arise where an offender could not be tried in any county of the commonwealth, as, for instance, on an indictment for the embezzlement of state funds. In Philadelphia, and perhaps some other counties of the state, county treasurers have been indicted and tried for the embezzlement of the county moneys, and I have never heard it even alleged that an impartial jury could not be obtained because of their interest as taxpayers. It would be an inconvenient rule to adopt, and recent events warn us not to be hasty in doing so.

It will be observed that it is not alleged in any of the petitions that the prejudice referred to extends to the learned judge, or that he is even likely to be influenced by it in any degree. That such fact is not alleged is conclusive that it does not exist. We have the right to assume, and from our personal knowledge of him we can do so confidently in this case, that the

Opinion of the Court.

learned judge below will do his whole duty, fully, fearlessly, and impartially.  That duty will require him to see to it that the petitioners are not convicted upon insufficient testimony, and to set the verdict aside if improperly rendered.  Should there be any error in his rulings, the petitioners are entitled to their bill of exceptions, and there is not a judge of this court who would not promptly allow an appeal in case the record should disclose even a fairly debatable question.

We cannot measure this case by the acts of assembly allowing a change of venue in civil cases.  That body is clothed with legislative powers, and may grant such change in any case in which, in their wisdom, they may consider that public policy requires it.  On the other hand, our powers are restricted, and can only be exercised where it clearly appears that such exercise is necessary to secure an impartial trial.  We are not so satisfied in these cases, under the facts as presented.  That a prejudice exists to some extent in Crawford county, against the defendants, may be conceded.  This is almost always so in the case of the failure of a bank with a large number of depositors.  Yet it by no means follows that this feeling is so strong and universal that, among the large and intelligent body of men who in a great measure compose the population of Crawford county, a jury cannot be found who will try the petitioners fairly, upon the law and the evidence, and not otherwise.  It is further to be observed that popular feeling of this kind is fleeting in its character, and soon passes away.  The delay that has necessarily resulted between the granting of these rules and the disposal of them by this court will naturally tend to allay public feeling and soften prejudice.  We are all of opinion that the rule in each case must be discharged,

And it is so ordered.