Assignment of Errors—Opinion of the Court.            [205 Pa.

*Error assigned* was the decree of the court.

*Edward A. Anderson*, with him *John H. Fow*, for appellant.

*Ira Jewell Williams*, with him *Simpson & Brown*, for appellee.

PER CURIAM, April 27, 1903:

The manifest intent of the testatrix in creating a testamentary trust was not only to preserve the remainders under her will, but to prevent the property from coming into the control of the life beneficiary and to put it under the management, control and discretion of the trustee during his life and the minority of the youngest of his children. This was enough to bring the case within the principle of Watson's Appeal, 125 Pa. 340.

Decree affirmed with costs.

---

# Commonwealth *v.* Ronemus.

*Change of venue—Criminal law—Murder—Labor troubles.*

On a petition for a certiorari to the court of oyer and terminer to remove the record and proceedings under an indictment in that court for murder against the petitioner, and for an order to change the venue, the action of the Supreme Court upon the certiorari, while not strictly the exercise of original jurisdiction, is nevertheless one of general supervision in the interest of justice, and is to be governed by the appellate court's judgment on the facts.

A change of venue will be granted by the Supreme Court in a murder case, where the facts are undisputed; that in the county where the killing occurred a large percentage of the population were miners, and were members of a labor union; that at the time of the killing a general strike was in progress; that the persons indicted were nonunion men employed by mine owners to protect property; that the person killed was a member of the union; that the members of the union and members of other unions, their neighbors, relatives and friends, were greatly excited and prejudiced against the prisoners; that this excitement had been promoted by inflammatory articles in newspapers and by sermons and addresses of ministers; that strikes, riots and violence were frequent; that the sheriff was unable to maintain peace, and had applied to the governor for troops, and that the disorder was so great that it invaded the court room, and on two occasions proceedings were interrupted and the judge insulted by sympathizers with the union and the strikers.

In such a case the change of venue will be granted, although at the time of the hearing the strike had been over for several months, and although in the opinion of the two associate judges unlearned in the law, overruling that of the president judge, a fair and impartial trial could be had in the county where the killing occurred.

Argued March 30, 1902. Petition, No. 35, Jan. T., 1903, by William Ronemus and Henry McElmoyle, for certiorari to the court of O. & T. of Carbon County, Oct. T., 1902, No. 6, and for change of venue in the case of Commonwealth v. William Ronemus and Henry McElmoyle. Before MITCHELL, FELL, BROWN, MESTREZAT and POTTER, JJ. Order vacated.

Petition for a certiorari and change of venue.

The petition was as follows :

The petition of the defendants above named respectfully represents :—

That on October 15, 1902, indictments charging the defendants with murder were found by the grand inquest in and for the county of Carbon, in the commonwealth of Pennsylvania, to No. 6, October term, 1902.

That the trial upon the said indictments is set down for the term of court of oyer and terminer in and for said county beginning January 12, 1903.

That on October 17, 1902, your petitioners presented their petition to the honorable, the judges of the said court, alleging that a fair and impartial trial could not be obtained in the said county by reason of the undue excitement, prejudice and combination existing against them, and praying that a change of venue should be granted.

That on December 15, 1902, the Hon. HORACE HEYDT, president judge of the said court, by opinion filed, granted the prayer of the said petition, directing a change of venue transferring the trial of the said case to the court of oyer and terminer of Lehigh county, Pennsylvania.

That on December 29, 1902, the Hon. E. P. WILLIAMS and the Hon. E. R. ENBODY, associate judges of the said court, unlearned in the law, filed a written opinion in which the prayer of the defendant's petition for a change of venue was refused.

That a large part of the citizens who serve as jurors in said

county are employed in the mining, preparing and shipping of anthracite coal.

That a large proportion of the men so employed are members of a labor organization called the United Mine Workers of America.

That Patrick Sharp, for the murder of whom the petitioners are charged in the above-named indictment, was a recognized leader of the United Mine Workers and was active in fomenting riot, strife and dissension during the period of the coal miners' strike, and in arousing hatred and prejudice against nonunion men and particularly against those who in any way aided in protecting coal properties from damage and destruction.

That petitioners are not members of the Mine Workers' Union, and at the time of the death of Patrick Sharp were employed by the Lehigh Coal & Navigation Company in protecting their properties, and by reason of the said employment incurred the hatred and ill-will of the members of the said union and of those affiliating and in sympathy with them.

That in the said county of Carbon there are many other labor organizations containing a large membership, who during the said strike sympathized with and contributed to the support of the members of the miners' union and their families.

That during the strike the nonunion men and those engaged in protecting the coal properties were threatened, abused, and ill-treated in their homes and while attending religious services upon the Sabbath, and upon the highways.

That so great was the excitement and disorder in the mining region of Carbon county that the sheriff was unable to maintain order, and was obliged to call upon the governor of the state to send troops to protect life and property.

That this hatred and prejudice against nonunion men by the members of the union extended to their neighbors, relatives, friends, and the members of other labor organizations throughout the county and still continues to exist.

Your petitioners therefore allege that under existing conditions they cannot have a fair and impartial trial upon the above indictment in the county of Carbon, because of the undue excitement in said county and the prejudice and combination against them, not only on the part of the public generally but

by the jurors likely to be called for the trial of the case . . . .
pray :

1. That a rule may be granted upon the commonwealth of
Pennsylvania to be served upon the district attorney of the
county of Carbon, to show cause why a writ of certiorari should
not be granted to bring into this court a certain indictment
and proceedings connected therewith now pending in the court
of oyer and terminer in said county of Carbon, No. 6, October term, 1902.

2. That the decree entered on December 29, 1902, by the
said associate judges be vacated and set aside.

3. That your honorable court will thereupon order a change
of venue in said case to some adjoining and convenient county
where the causes alleged in said petition do not exist.

4. That all proceedings on the said indictment in the court
of oyer and terminer of the said county of Carbon be stayed
until further order of this court, and they will ever pray.

The material findings of fact by HEYDT, P. J., are set forth
in the opinion of the Supreme Court.

The president judge entered an order directing that the venue
should be changed to Lehigh county. The associate judges
unlearned in the law dissented from the opinion of the president judge, and entered an order setting aside the order of the
president judge and refusing the change of venue.

*Frederick Bertolette* and *Samuel Dickson*, for petitioners.—
The power of the Supreme Court to issue a writ of certiorari
in such cases is now no longer open to question. The authorities are collected and reviewed in Commonwealth v. Delamater,
145 Pa. 210, Commonwealth v. Smith, 185 Pa. 553, and Petition
of M. S. Quay, 189 Pa. 517. In the opinion of Mr. Justice
MITCHELL in Commonwealth v. Smith, 185 Pa. 553, it is said
that the proper practice is to apply for a change of venue to the
court below, before asking the Supreme Court to issue a writ
of certiorari and make an order. See also Com. v. Balph, 111
Pa. 365.

The facts set forth in the petition, and found by the president judge, constitute a case for the granting of a change of
venue within the meaning of the second clause of the 1st section of the Act of March 18, 1875, P. L. 30.

*Frank P. Sharkey,* district attorney, and *E. M. Mulhearn,* for the commonwealth, cited : Com. v. Buccieri, 153 Pa. 535.

OPINION BY MR. JUSTICE MITCHELL, April 27, 1903 :

This is a petition for a certiorari to the court of oyer and terminer of Carbon county to remove the record and proceedings under an indictment in that court for murder against the petitioners, and for an order to change the venue under the Act of March 18, 1875, P. L. 30.   The authority of this court independently of that act has been settled by the cases of Com. v. Balph, 111 Pa. 365, Com. v. Delamater, 145 Pa. 210, Com. v. Smith, 185 Pa. 553, and Petition of Quay, 189 Pa. 517. The petitioners, following the practice indicated in Com. v. Smith, supra, first filed  their petition in the oyer and terminer of Carbon county, with  the result after a hearing and consideration by the full court that the president judge entered of record an order for a change of venue supporting it by an elaborate opinion on  the facts and the law.   One of the associate judges expressed his dissent at the time and two weeks later both the associates  joined in an opinion expressing their dissent, and  entered  an order denying the change of venue.

On this state of facts, set forth in the petition, this court granted a rule to show  cause why a certiorari should  not be allowed, on which the record has been returned and is now before us.

Objection is made not only in  respect to  the irregularity of the judgment entered  by the two  associate  judges after the formal order of record by the  president, but also in  respect to the authority of the associate judges to sit at all after the constitutional termination of their office by the erection of Carbon county into a separate judicial district.   We do not, however, find it necessary to consider any of these questions.   The action of this court upon certiorari in such cases while not strictly the exercise of original jurisdiction, is nevertheless one of general supervision in the interest of justice, and is to be governed by our judgment on the facts, so that as said in Com. v. Balph, supra, " where it is made  clear to us  that a man cannot have such a (fair) trial, either from an excited and inflamed condition of the public mind in the county where the indictment was found, . . . . or from any other sufficient cause, we shall issue

our certiorari, remove the record into this court and send it down to another county for trial."

The facts in the present case are not substantially disputed. They are gathered from a very large number of affidavits and counter affidavits filed in the court below in support and against the motion for a change of venue, which were elaborately considered and clearly set forth by the president judge in his opinion granting the change. In condensed form his findings are:

1. That the mining of anthracite coal is one of the most important industries of Carbon county, and the persons engaged in or dependent on such mining represent a large percentage of the total population.

2. A labor union, known as the United Mine Workers of America includes in its membership a very large percentage of all the persons employed in and about the mines.

3. In May, 1902, a general strike was declared by the said labor union, which included the firemen, engineers and pump runners.

4. To protect their property from destruction from the accumulation of water, etc., the mine owners and operators employed persons to keep up the fires under the boilers and run the pumps. The petitioners were so employed, not being members of the union, but Patrick Sharp, the person for whose murder they are indicted, was a member of said union.

5. There are in Carbon county other labor unions, of men working in other crafts, who were in sympathy with the miners' union and supported the striking miners by contributing money.

6. The members of all these unions, their neighbors, relatives and friends, were greatly excited and prejudiced against the petitioners on account of their working at a time when a general strike had been declared.

7. This general excitement and prejudice had been displayed and promoted by inflammatory articles in the local newspapers and by sermons and addresses by some ministers, who forgetting their mission as composers of strife, had disgraced their pulpits by denunciation of those who continued to work.

8. During the strike riots and violence were frequent, men who continued at work were threatened, abused, hung in effigy and their families terrorized, such conduct extending even to

the school children.  So great did the lawlessness and disorder become that the sheriff of the county was unable to maintain the peace and on his application the governor had sent troops to preserve order.

9. The disorder was so great that it invaded the court room and on two occasions specified the proceedings were interrupted and the judge insulted by sympathizers with the union and the strikers.

10. The learned judge concludes: " This case is sui generis. Ordinarily when a murder is committed, there is a popular indignation by reason of the cruelty of the deed—commiseration for the deceased, or some incident affecting the deceased or the slayer.  In the present case there was a popular vindictiveness on the part of the miners, . . . . not so much because Patrick Sharp was killed, but because he was killed by "deputies;" because a union man was killed by nonunion men."

Against this convincing array of facts there is not presented a single denial or even question.   The commonwealth submitted answers " all exactly alike " from certain citizens and electors setting forth that they have knowledge of the sentiments of jurors and the public generally " and denying that any such causes for a change of venue exist; but alleging, that in their opinion there is no undue excitement against said defendants in said county, so as to prevent their obtaining a fair and impartial trial in said county, and there does not exist in said county a prejudice against said defendants such as would prevent their obtaining a fair and impartial trial in said county."

The action of the associate judges is upon the same basis. Their opinion makes no question of the facts, but states that " the petition and the facts alleged therein were fully presented and thoroughly discussed by the counsel for the prisoners and patiently and carefully heard and considered by each member of this court.   The president judge has filed an opinion granting the prayer of the petition ; but we, his associates, cannot and do not concur with him for the reason that notwithstanding all the allegations of defendants we are by no means convinced that there exists in this county, such undue excitement against the prisoners or so great a prejudice against them or any combination against them instigated by influential persons, by reason of which they cannot obtain a fair and impartial trial in said county."

The opinions of magistrates qualified by acquaintance with the popular feeling of their vicinity and formed deliberately under such circumstances are entitled to respectful consideration. In this case they are neutralized by the opinion of the president judge, formed under the same circumstances and with the advantages of legal training and experience in observing the subtle influences that affect the administration of justice. But while both opinions have received due attention yet the question before this court is not one of opinion but of facts and on the undisputed facts the case admits of but one conclusion. That at the time of the indictment and of the filing of this petition a fair and impartial trial could be had in Carbon county cannot be maintained for a moment. The language of the president judge is again worth quoting, " This is not the ordinary case of homicide. It was committed while the greatest strike in the history of the labor world was progressing. A partial reign of terror existed in the coal region. . Labor was arrayed against capital. These defendants were not members of the miners' union and were called ' scabs ' and ' deputies ' by the strikers, and were working at the time when the miners were out on strike. The masses of the people had arrayed themselves on the one side or the other by the great contest which was being waged. Intense excitement prevailed all through the coal region."

This condition is not altogether ended. The strike is over, whether settled permanently or not is yet uncertain. The excitement may have quieted down, but the antagonisms which produced it are those of conflicting interests, are of long standing and are permanent in their nature. The passions only slumber and may break out again at any moment. It is asking too much of credulity to believe that men who did not hesitate at arson and riot and terrorism over women and children will stop now and do their part for a fair and impartial trial in a case where only a few months ago they were clamorous to hang the accused without trial, and carried feeling so far as to insult the court in its public administration of justice. The accused have a right not to be subjected to so small and perilous a chance.

The rule for certiorari is made absolute, the order of the associate judges of the oyer and terminer refusing a change of

venue is vacated, a change of venue granted, and the record is ordered to be certified to the court of oyer and terminer of Montgomery county with instructions to proceed as if the indictment had been originally found in said county. Said proceedings and trial to be at the expense of the county of Carbon.