Carpentertown Coal & Coke Company et al. *v.*
Laird et al.

Argued July 6, 1948. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Carroll Caruthers,* with him *William A. Meyer* and *Kountz, Fry, Staley & Meyer,* for Carpentertown Coal & Coke Co., petitioner.

*Thomas G. Taylor, John D. McIntyre* and *Reed, Smith, Shaw & McClay,* for Thaw Coke Trust, petitioner.

*James Gregg,* with him *Douglass D. Storey, John D. Faller, Storey & Bailey* and *Portser, Gregg & McConnell,* for Pennsylvania Turnpike Commission, respondent.

*Harry F. Stambaugh,* Special Counsel, with him *T. McKeen Chidsey,* Attorney General, for Commonwealth on the question of jurisdiction to issue writs of prohibition.

OPINION BY MR. JUSTICE HORACE STERN, September 27, 1948:

It is alleged that a State Mining Commission in Westmoreland County is threatening to exercise a jurisdiction which it does not possess, and we are asked to issue a writ of prohibition to prevent such usurpation of judicial authority.

In 1944 Carpentertown Coal and Coke Company, lessee from the Thaw Coke Trust of coal underlying the Pennsylvania Turnpike, caused a State Mining Commission to be convened under the provisions of the Act of July 3, 1941, P. L. 259, in order to determine what portion of the coal must be left in place to support the turnpike and to assess the resulting damages to the Company. On appeal to this Court it was held that the State Mining Commission had jurisdiction in the proceedings over the Turnpike Commission: *Pennsylvania Turnpike Commission Appeal,* 351 Pa. 139, 40 A. 2d 404. The State Mining Commission found that the Turnpike Commission had waived the right to vertical and lateral support, that the Coal Company could remove all the coal, and that it was therefore not entitled to recover any damages. After certain subsequent proceedings, here immaterial, the Coal Company proceeded to mine the coal, the greater portion of which has now been removed. In November, 1947, more than two years after the last order and decree in the proceedings had been made by the State Mining Commission, the Turnpike Commission petitioned it to order the Coal Company,

lessee, and the Thaw Coke Trust, owner, to pay the Turnpike Commission a certain specified sum as damages resulting from the subsidence of one of its bridges caused by alleged failure of the Company to mine the coal in an orderly fashion; also that the Company be ordered to cease meanwhile from further operations. On the basis of this petition the President Judge of the Court of Common Pleas of Westmoreland County, acting as Chairman of the State Mining Commission, issued a rule upon the owner and the lessee to show cause why the prayer should not be granted. Thereupon the Thaw Coke Trust and the Coal Company filed the present petition in this Court for a writ of prohibition to enjoin the State Mining Commission from any further action in the proceedings, contending that its jurisdiction had ceased after the expiration of the appeal period from its last order or decree in July, 1945, and contending also that it did not have jurisdiction to assess damages against the owner or lessee of the coal after it had once finally determined that all the coal could be removed,— indeed, that it had no power in any case whatsoever to assess damages *against* the coal owner or lessee.

The Turnpike Commission, having been granted permission to intervene as a party respondent, opposes the petition on two grounds: (1) that this Court has no constitutional power to issue a writ of prohibition; and (2) even if such power exists it should not be exercised in the present instance. The Commonwealth has filed a brief disputing the former but concurring in the latter of these contentions. The argument against the existence of the power is based upon article V, section 3 of the Constitution, which provides that the Supreme Court shall have original jurisdiction in cases of injunction where a corporation is a party defendant, of habeas corpus, of mandamus to courts of inferior jurisdiction, and of quo warranto as to all officers of the Commonwealth whose jurisdiction extends over the State, "but shall not exercise any other original jurisdiction".

Prohibition is a common law writ of extremely

ancient. origin,—so ancient, indeed, that several forms for its use are set forth in Glanville, the earliest known treatise on English law (1187) ; in the following century it was recognized by Bracton as an established part of the common law. Being a prerogative writ of the king it was originally employed exclusively by the Court of King's Bench, but subsequently issued out of the Courts of Chancery, Common Pleas and Exchequer as well. Its principal purpose is to prevent an inferior judicial tribunal from assuming a jurisdiction with which it is not legally vested in cases where damage and injustice would otherwise be likely to follow from such action. It does not seek relief from any alleged wrong threatened by an adverse party; indeed it is not a proceeding between private litigants at all but solely between two courts, a superior and an inferior, being the means by which the former exercises superintendence over the latter and keeps it within the limits of its rightful powers and jurisdiction.

We have no doubt as to the power of the Supreme Court of this Commonwealth to issue such a writ,—a power which in fact the Court has exercised with comparative frequency: *First Congressional District Election,* 295 Pa. 1, 144 A. 735; *McNair's Petition,* 324 Pa. 48, 187 A. 498; *Park's Petition,* 329 Pa. 60, 196 A. 495; *Philadelphia County Grand Jury Investigation Case,* 347 Pa. 316, 32 A. 2d 199; cf. *Dauphin County Grand Jury Investigation Proceedings (No. 1),* 332 Pa. 289, 2 A. 2d 783. In *First Congressional District Election,* supra, it was stated (p. 13, A. p. 739) that "the right to exercise [the common law writ of prohibition] . . . has never been taken from this court." Somewhat analogous to the issuance of such writs is the court's well established power and practice to issue writs of certiorari to inferior courts to remove proceedings there pending and to transfer them to other courts for trial, thus preventing the original court from further proceeding therewith; the existence of such power to change the venue, both in criminal and civil cases, which is essentially

an exercise of quasi-original jurisdiction, has been sustained in many cases which have arisen since the adoption of our present Constitution: *Commonwealth v. Balph*, 111 Pa. 365, 3 A. 220; *Commonwealth v. Delamater*, 145 Pa. 210, 22 A. 1098; *Commonwealth v. Smith*, 185 Pa. 553, 40 A. 73; *Petition of M. S. Quay*, 189 Pa. 517, 42 A. 199; *Commonwealth v. Ronemus*, 205 Pa. 420, 54 A. 1095; *Commonwealth v. Reilly*, 324 Pa. 558, 188 A. 574; *Apex Hosiery Co. v. Philadelphia County*, 331 Pa. 177, 200 A. 598.

It is suggested by the Turnpike Commission that although this Court has assumed the power to issue writs of prohibition the question as to its constitutional right so to do has not heretofore been challenged or discussed. Be that as it may, the justification for the Court's exercise of such power is to be found in the Act of May 22, 1722, 1 Sm. L. 131, 140, section XIII, which vested in the Supreme Court all the jurisdictions and powers of the three superior courts at Westminster, namely, the King's Bench, the Common Pleas and the Exchequer. Inherent in the Court of King's Bench was the power of general superintendency over inferior tribunals, a power which was of ancient inception and recognized by the common law from its very beginnings. Blackstone says, Book III, *42: "The jurisdiction of this court [of King's Bench] is very high and transcendent. It keeps all inferior jurisdictions within the bounds of their authority, and may either remove their proceedings to be determined here, or prohibit their progress below." By the Act of 1722 the Supreme Court of Pennsylvania was placed in the same relation to all inferior jurisdictions that the King's Bench in England occupied, and thus the power of superintendency over inferior tribunals became vested in this Court from the time of its creation: *Commonwealth v. Ickhoff*, 33 Pa. 80, 81; *Chase v. Miller*, 41 Pa. 403, 411. In the exercise of its supervisory powers over subordinate tribunals the Court of King's Bench employed the writ of prohibition and such right and practice accordingly passed to the

Supreme Court; *First Congressional District Election*, 295 Pa. 1, 13, 144 A. 735, 739; *McNair's Petition*, 324 Pa. 48, 64, 187 A. 498, 505. The provision of the Constitution limiting the original jurisdiction of the Court did not affect the existence of this right; the Constitution did not remove from the Court its supervisory functions over lower courts and therefore, of necessity, did not forbid its use of the writ of prohibition in the performance of such functions. As a matter of fact the issuance of such a writ is not, strictly speaking, an exercise of original jurisdiction (see *Commonwealth v. Balph*, 111 Pa. 365, 382, 3 A. 220, 230; *Commonwealth v. Ronemus*, 205 Pa. 420, 424, 54 A. 1095, 1097), for it issues only *after* a suit has been entered in an inferior court, and its purpose, as already stated, is not to pass upon the rights of litigants, but to control and manage the inferior court itself and prevent it from usurping jurisdictions and powers which it does not constitutionally and legally possess. The power of controlling the action of inferior courts is so general and comprehensive that it has never been limited by prescribed forms of procedure or by the particular nature of the writs employed for its exercise. It may further be pointed out that Article V, section 3 of the Constitution expressly permits the exercise by this Court of original jurisdiction in cases of mandamus to courts of inferior jurisdiction, and prohibition is the exact counterpart of mandamus, the only difference being that the latter commands certain things to be done whereas prohibition forbids the doing of certain things which ought not to be done.

While the issuance of a writ of prohibition does not constitute an exercise of purely original jurisdiction no more can it be said to be an exercise of appellate jurisdiction; it is, however, a means by which a court protects its appellate jurisdiction and may therefore be regarded as a writ ancillary to the exercise of such jurisdiction. Thus it was said in *Ex Parte Republic of Peru*, 318 U. S. 578, 582, 583: "Under the statutory provisions, the jurisdiction of this Court to issue common-

law writs in aid of its appellate jurisdiction has been consistently sustained. The historic use of writs of prohibition and mandamus directed by an appellate to an inferior court has been to exert the revisory appellate power over the inferior court. .... Such has been the office of the writs when directed by this Court to district courts, . . . In all these cases, . . . the appellate, not the original, jurisdiction of this Court was invoked and exercised." See also *Roche, U. S District Judge, v. Evaporated Milk Association*, 319 U. S. 21; *United States Alkali Export Association, Inc., v. United States*, 325 U. S. 196, 201, 202. In the *Roche* case it was held that the authority of a circuit court of appeals to issue writs of mandamus is not confined to their issuance in aid of a jurisdiction already acquired by appeal but extends to those cases which are within its appellate jurisdiction although no appeal has been perfected.

The writ of prohibition is not restricted in its operation to courts or to inferior judicial tribunals, but it may issue also against "inferior ministerial tribunals, possessing incidentally judicial powers, and known as quasi-judicial tribunals": *First Congressional District Election*, 295 Pa. 1, 13, 144 A. 735, 739; and a State Mining Commission does possess such powers over the subject-matter entrusted to it and within the restrictions prescribed by the statutory law of the Commonwealth: *Glen Alden Coal Company's Case*, 339 Pa. 149, 153, 14 A. 2d 76, 79.

This brings us, then, to the question whether, under the circumstances of the present case, a writ of prohibition should issue. We are clearly of opinion that it should not. The Act of July 3, 1941, P. L. 259, §1, provides that "All parties in interest shall have the same right of appeal from decisions, orders and decrees of the State Mining Commission to the Superior and Supreme Courts, as now or hereafter provided for appeals from the decisions, orders and decrees of courts of common pleas". (See *Glen Alden Coal Com-*

*pany Case,* 350 Pa. 177, 182, 38 A. 2d 37, 39). Sections 6 and 12 of the Act of May 19, 1897, P. L. 67, assure to the petitioners the benefit of a supersedeas on the filing of a bond in such appellate proceedings. The writ of prohibition is one which, like all other prerogative writs, is to be used only with great caution and forbearance and as an extraordinary remedy in cases of extreme necessity, to secure order and regularity in judicial proceedings if none of the ordinary remedies provided by law is applicable or adequate to afford relief. It is a writ which is not of absolute right but rests largely in the sound discretion of the court. It will never be granted where there is a complete and effective remedy by appeal, certiorari, writ of error, injunction, or otherwise: see *First Congressional District Election,* 295 Pa. 1, 13, 144 A. 735, 739, 740, and cases referred to in the dissenting opinion in *Philadelphia County Grand Jury Investigation Case,* 347 Pa. 316, 330-334, 32 A. 2d 199, 206-208; also *Roche, U. S. District Judge, v. Evaporated Milk Association,* 319 U. S. 21, 26; *United States Alkali Export Association, Inc., v. United States,* 325 U. S 196. As pointed out in the last cited authority (p. 203), "appellate courts are reluctant to interfere with decisions of lower courts, even on jurisdictional questions, which they are competent to decide and which are reviewable in the regular course of appeal. . . . The [extraordinary] writs may not be used as a substitute for an authorized appeal." In the present case the action of the Chairman of the State Mining Commission in granting a preliminary rule to show cause does not necessarily indicate that the State Mining Commission itself may not, on argument directed to it, ultimately conclude that it is without jurisdiction over the prayer of the petition of the Turnpike Commission; it cannot be assumed that it will finally act if its lack of jurisdiction be established. If, however, it decides to the contrary and proceeds to adjudicate the controversy, the questions as to whether or not it has such jurisdiction,

and, if so, whether its final order or decree in the matter is proper, are both determinable by this Court on appeal, under the provisions of the Act of 1941. It is obvious, therefore, that there is no occasion whatever for invoking in this case the exercise of the extraordinary remedy of prohibition.

Accordingly, the writ is refused. The petition of the Thaw Coke Trust and the Carpentertown Coal & Coke Company is dismissed, without prejudice; costs to abide the event.