## Commonwealth v. Homka

*Richardson Dilworth*, district attorney, and *Samuel Dash*, assistant district attorney, for Commonwealth.

*George T. Guarnieri*, for defendant.

CRUMLISH, J., August 20, 1954.—The very narrow question here for determination is the following: Does a court of quarter sessions of the peace have the authority and jurisdiction to issue a writ of prohibition against a magistrate?

Mr. Chief (then) Justice Horace Stern has recently supplied this excellent definition of the writ under consideration:

"Prohibition is a common law writ of extremely ancient origin,—so ancient, indeed, that several forms for its use are set forth in Glanville, the earliest known treatise on English law (1187); in the following century it was recognized by Bracton as an established part of the common law. Being a prerogative writ of the king it was originally employed exclusively by the Court of King's Bench, but subsequently issued out of the Courts of Chancery, Common Pleas and Exchequer as well. Its principal purpose is to prevent an inferior judicial tribunal from assuming a jurisdiction with which it is not legally vested in cases where damage and injustice would otherwise be likely to follow from such action. It does not seek relief from any alleged wrong threatened by an adverse party; indeed it is not a proceeding between private litigants at all but solely between two courts, a superior and an in-

ferior, being the means by which the former exercises superintendence over the latter and keeps it within the limits of its rightful powers and jurisdiction": Carpentertown Coal & Coke Company v. Laird, 360 Pa. 94, 97-98 (1948).

Writ of prohibition is also defined as "that process by which a superior court prevents inferior courts, tribunals, officers, or persons from usurping or exercising a jurisdiction with which they have not been vested by law": 50 C. J. 654, §1.

Defendant, Angelina Homka, has applied to this court for such a writ against Magistrate E. David Keiser, and the district attorney's office has challenged, preliminarily, defendant's right to proceed with such a writ in this court. There is no specific Commonwealth constitutional provision concerning the nature and scope of this writ, nor any legislative clarification regarding it, and there is no express statutory provision for its use.

It is defendant's contention that the quarter sessions court of the peace has inherent power to issue writs of prohibition to a magistrate. This proposition, her learned counsel says, "is based upon an analysis of the express language of article V of the Constitution of Pennsylvania, the schemata of the judiciary system as therein set forth, the Pennsylvania statutory enactments relative to their jurisdiction and powers of the various courts of superior and inferior jurisdiction; the enactments of the colonial assembly antedating the Constitution of 1790 and, in turn, the necessary reference of all of the aforesaid to the common law of England, which is part of the law of Pennsylvania: Act of January 28, 1777, 1 Sm. L. 429".

Our Supreme Court has made it crystal clear that there is no doubt of its power to issue such a writ, a power derived from the Act of May 22, 1722, sec. XIII, 1 Sm. L. 131, 140, which vested in the Supreme Court

all the jurisdictions and powers of the three superior courts at Westminster, namely, the King's Bench, the Common Pleas and the Exchequer. Inherent in the court of the King's Bench was the power of general superintendency over inferior tribunals, a power which was of ancient inception and recognized by the common law from its very beginning: Carpentertown Coal & Coke Co. v. Laird, supra, p. 99; First Congressional District Election, 295 Pa. 1; McNair's Petition, 324 Pa. 48; Park's Petition, 329 Pa. 60; Philadelphia County Grand Jury Investigation Case, 347 Pa. 316; cf. Dauphin County Grand Jury Investigation Proceedings (No. 1), 332 Pa. 289.

Defendant contends, as we understand her argument, that (a) at no time has the Supreme Court declared the writ to be one exclusively within its jurisdiction and that, (b) the quarter sessions court also historically has jurisdiction to issue the writ of prohibition.

This raises two questions: (1) Did the ancient quarter sessions court of the peace have express or inherent authority to issue writs of prohibition and if so, have the courts of quarter sessions in Pennsylvania inherited such authority?; (2) If question no. 1 is answered in the negative, have the courts of quarter sessions of the peace in Pennsylvania been vested with such authority by reason of Colonial Assembly enactments or constitutional provisions?

The jurisdiction of the ancient quarter sessions courts was never on a parity with that of the King's Bench. See Chitty's Criminal Law, vol. I, 3rd Am. ed., 133, where it was said:

"It is not, however, proposed to consider every tribunal before which criminal matters may possibly arise, but only those courts which are more frequently resorted to for the trial and punishment of the offenders. Of the *inferior kind*, are the general and quarter

sessions of the peace. Of the *superior order*, the assizes, including the commissions of oyer and terminer, general gaol delivery, assize and Nisi Prius—courts under special commissions—the Admiralty sessions—and the court of King's Bench."

See also Stephen's History of the Criminal Law of England, vol. I, p. 111, et seq.; Holdsworth's A History of English Law, 3rd ed., vol. I, p. 292, et seq.

The court of quarter sessions originally received its jurisdiction to hear and determine indictments from the statutes 18 Edw. 3. st. 2, c. 2, and 34 Edw. 3. c. 1. Eventually, the court assumed jurisdiction in " 'all felonies, poisonings, enchantments, sorceries, arts magic, trespasses, forestallings, regratings, engrossing, and extortions, and all other crimes and offences of which such justices may or ought lawfully to inquire', subject to this caution, 'that if a case of difficulty shall arise they shall not proceed to give judgment except in the presence of some justice of one of the benches or of assize,' ": Stephen, supra, 114. The courts of quarter sessions of the peace could not exercise general criminal jurisdiction, but were confined by specific statutes and by authority granted by superior commissions to the trial of only certain offenses. Nowhere does it appear that this court had power over any inferior tribunals or law enforcement officers such as power to issue a writ of prohibition.

Since the quarter sessions courts were inferior courts it seems proper to postulate that they were without jurisdiction to issue writs of prohibition. However, Holdsworth tells us that "A prohibition is a writ *issuing properly only out of the court of King's Bench, being the king's prerogative writ;* but, for the furtherance of justice, it may now also be had in some cases out of the court of Chancery, Common Pleas, or Exchequer; directed to the judge and parties of a suit in any inferior court, commanding them to cease from

the prosecution thereof, upon a suggestion that either the cause originally, or some collateral matter arising therein, does not belong to that jurisdiction": Holdsworth's A History of English Law, 3rd ed., vol. I, 228. (Italics supplied.)

Our research discloses that prohibition was originally one of the "prerogative writs" originating in and issuing out of the Court of King's Bench and later issuing out of the Courts of Common Pleas, Exchequer and Chancery, but nowhere is there to be found evidence of jurisdiction to issue this writ by the inferior courts of quarter sessions of the peace.

Accordingly, the first question must be answered in the negative.

Having decided that the ancient quarter sessions courts of the peace had no jurisdiction to issue writs of prohibition, we come now to the second question. Have the local quarter sessions courts been vested with such authority? Defendant's argument is indeed ingenious. It is contended that although the judicial power of the crown of England "may have been vested in the court of King's Bench", nevertheless, "the judicial power of this Commonwealth is vested not exclusively in the Supreme Court but pro tanto in all of the courts enumerated in article V, sec. 1, of the Constitution." It is asked:

"Would it not follow that the quarter sessions court, equally with all the courts designated by article V, derive their jurisdiction and powers directly from the Commonwealth (i.e. the 'sovereign') and that each within its allocated jurisdiction administers the Commonwealth's (the King's) justice, and therefore historically by virtue of the common law each enjoys powers of the King's Bench pro tanto and therefore to issue prohibition to inferior jurisdictions, *unless such power be denied to any such court by express statutory language.*"

The weakness of this argument is to be found in the wording of the Act of May 22, 1722, supra, which expressly gave the Supreme Court authority "to hear and determine all and all manner of pleas, plaints and causes, which shall be removed or brought there from the respective General Quarter Sessions of the Peace, and Courts of Common Pleas, . . . as fully and amply, to all intents and purposes whatsoever, as the Justices of the. Court of King's Bench, Common Pleas, and Exchequer at Westminister, or any of them, may or can do", as well as express provisions in statutes referred to hereinafter.

However, in order to fully explore the question we shall examine the pertinent constitutional and statutory enactments.

The pertinent constitutional provisions are as follows:

Section 1, art. V, of the Constitution of 1874, provides:

"The judicial power of this Commonwealth shall be vested in a Supreme Court, in courts of common pleas, courts of oyer and terminer and general jail delivery, courts of quarter sessions of the peace, orphans' courts, magistrates' courts, and in such other courts as the General Assembly may from time to time establish."

Section 1, art. V. of the Constitution of 1838, provided:

"The judicial power of this Commonwealth shall be vested in a supreme court, in courts of oyer and terminer and general jail delivery, in a court of common pleas, orphans' court, rigisters' (sic) court, and a court of quarter sessions of the peace for each county, in justices of the peace, and in such other courts as the legislature may from time to time establish."

Section 1, article V, of the Constitution of 1790, provided:

"The judicial power of this commonwealth shall be vested in a supreme court, in courts of oyer terminer and general jail delivery, in a court of common pleas, orphans' court, register's court, and a court of quarter sessions of the peace for each county, in justices of the peace, and in such other courts as the legislature may, from time to time, establish."

Section 24 of the Constitution of 1776, provided:

"The supreme court, and the several courts of common pleas of this commonwealth, shall, besides the powers usually exercised by such courts, have the powers of a court of chancery, so far as relates to the perpetuating testimony, obtaining evidence from places not within this state, and the care of the persons and estates of those who are 'non compotes mentis', and such other powers as may be found necessary by future general assemblies, not inconsistent with this constitution."

Section 26 thereof provided:

"Courts of sessions, common pleas and orphans courts shall be held quarterly in each city and county; . . ."

It is to be noted that all these constitutional provisions are silent as to the jurisdiction of the courts of quarter sessions. In Kroemer v. The Commonwealth, 3 Binney 577 (1811), the question arose concerning the jurisdiction of the quarter sessions court. Tilghman, C. J., speaking for the Supreme Court, p. 578, said:

"The constitution is silent as to the jurisdiction of the Quarter Sessions; from whence it is to be inferred, that it was considered as a court whose jurisdiction was well known, and in which it was not intended to make any alteration."

He construes the Act of May 22, 1722, supra, to mean (p. 529):

". . . that crimes punishable with death should be tried by the justices of the Supreme Court, and all other offences by the courts of Quarter Sessions. But the justices of the Supreme Court had likewise jurisdiction of inferior offences, when holding courts of Oyer and Terminer and General Gaol Delivery. That this was the boundary of the respective jurisdictions, I have always understod, and the records of the several courts before the revolution, will prove it."

Mr. Justice Yeates in a concurring opinion stated (page 582):

"I am fully satisfied, that the jurisdiction of the Sessions is solely founded on our own acts of assembly, and therefore I shall examine those laws as far back as I have materials in my power." After discussing such acts, he reached this conclusion (page 583): ". . . the limits of jurisdiction to the Supreme Court and Quarter Sessions are precisely drawn. The Sessions have a concurrent jurisdiction with the Supreme Court as to all crimes cognisable before them, except as to capital offences or felonies of death."

Inasmuch as Justice Yates was of the opinion "that the jurisdiction of the sessions is solely founded on our own acts of assembly" it is proper that we examine the pertinent acts in order to determine whether or not quarter sessions was given jurisdiction to issue writs of prohibition.

At the outset it is to be observed that during the organization of our Pennsylvania colony, all legislative enactments were subject to the final approval of the Crown. As is hereinafter shown, several acts passed to establish a judicial system were repealed by the Crown. These acts are worthy of review in spite of their eventual rejection since each reveals the basic judicial structure contemplated by our found-

ing fathers, with the delegation of authority and power to the various courts created.

On February 28, 1710-11, there was passed *"An Act for Establishing Courts of Judicature in this Province"*. Section I thereof created the Supreme Court of Pennsylvania consisting of four justices and authorizing each of them "when and as often as there may be occasion, to issue forth writs of habeas corpus, certiorari; writs of error, *prohibitions*, injunctions, audita querela, mandamus, and all remedial and other writs and precepts [excepting the original writs and process, which by this act are to be granted by the respective justices or magistrates hereinafter mentioned or intended]": Vol. II, Statutes at Large of Pa. 301-02.

Section V established the court to be styled (supra, p. 308) : "The general quarter sessions of the peace and gaol delivery." Jurisdiction was conferred upon this court to hear and determine specific kinds of crimes excepting treasons, murders and such other crimes made felonies of death. Power was given (supra, p. 310) to "grant and issue forth all and all manner of writs, precepts and process, which by law are or ought to be awarded or issued in or upon the procedure of any of the offenses, matters, causes and things hereby made cognizable in said courts of general quarter-sessions and gaol delivery . . .". (Italics supplied.)

Thus, at an early date in our legislative history we find the writ of prohibition specifically granted to the Supreme Court.

The foregoing act was repealed by the Queen in council, February 30, 1713-14, and all our courts ceased to function. A complete failure in administration followed, and to remedy the situation, the Hon. Col. Charles Gookin, then Lieutenant Governor of the Province of Pennsylvania, appointed and established a judicature system, recorded July 21, 1714, wherein

he created a Supreme Court of three justices with power, inter alia, "to hear and determine all pleas, plaints and causes, which shall be removed or brought there from the general quarter-sessions of the peace, or court of common pleas, or from the sessions or courts of record held for the city of Philadelphia, or from any other court or courts of record within the said respective counties, by writs of habeas corpus, certiorari, writs of error, *prohibitions*, injunctions, audita querela, mandamus or any other remedial or mandatory writ or writs of what nature or kind soever . . . and generally shall minister common justice to all persons concerning the premises, according to law, as fully and amply to all intents and purposes whatsoever, as the justices of the court of Queen's Bench, common pleas and exchequer at Westminster may or can do . . .": Id., appendix III, sec. III, 556-558. (Italics supplied.)

By an Act of May 28, 1715, the courts of quarter sessions in the province were established. The provisions of this act were similar to the structure outlined by Governor Gookin in 1714. No grant of King's Bench powers to these courts was contained therein, but specific jurisdiction of certain classes of crimes was given. This act was repealed on July 21, 1719, by the Lords Justices in Council, as was a companion act establishing courts of common pleas, and a third act dealing with the practices of the province courts: Vol III, Statutes at Large of Pa. 33-37, 69, 73.

The Act of May 22, 1722, 1 Sm. L. 131, establishing courts of judicature in the province, became law by lapse of time in accordance with the proprietary charter; it was apparently never considered by the Crown: Vol. III, Statutes at Large of Pa. 308.

In this act we find the same general pattern followed as was used in the preceeding acts. Certain changes of language and form appear, but the general judicial structure was retained. For our purposes

here, we note that in section XI the Supreme Court was given "full power and authority, by virtue of this act, when and as often as there may be occasion, to issue forth writs of habeas corpus, certiorari, and writs of error, and all remedial and other writs and process, returnable to the said court, and grantable by the said Judges by virtue of their office, in pursuance of the powers and authorities hereby given them . . .": Act of May 22, 1722, supra, p. 139. Here, for the first time in this series of legislative acts, no specific mention of the writ of prohibition appears. However, it is upon this section of the act that Chief Justice Horace Stern based his conclusion in Carpentertown Coal & Coke Co. v. Laird, supra, that our Supreme Court had authority to issue such writ.

In section XIII of the act, the Supreme Court was given power "to examine and correct all and all manner of errors of the Justices and Magistrates . . . in their judgments, process and proceedings in the said courts, as well in all pleas of the Crown, as in all pleas real, personal and mixed; and thereupon to reverse or affirm the said judgments, as the law doth or shall direct; And also to examine, correct and punish the contempts, omissions and neglects, favours, corruptions and defaults, of all or any of the Justices of the Peace, Sheriffs, Coroners, Clerks and other officers within the said respective counties . . . (and) minister justice . . . as fully and amply, to all intents and purposes whatsoever, as the Justices of the Court of King's Bench, Common Pleas, and Exchequer, at Westminster, or any of them, may or can do . . .": Id., at p. 140.

Section II of the same act created a court to be "styled the General Quarter Sessions of the Peace and Gaol delivery . . .": Id., at p. 136. Section III provides for the appointment of justices, which justices, or any three of them, "shall and may hold the said

General Sessions of the Peace and Gaol Delivery according to law, and as fully and effectually, as any Justice of the Peace, Justices of the Assize, Justices of Oyer and Terminer, or of Gaol Delivery, may or can do." Id., at p. 137.

By section VIII, these justices were given specific power to "direct their writs or precepts to all or any the Sheriffs or other officers . . . where need shall be, to take such persons indicted or outlawed." Nowhere does there appear a right in the justices of the general quarter sessions to supervise the magistrates or inferior tribunals in any way: Id., at p. 138.

We find that on May 20, 1767, vol. VII, Statutes at Large of Pa. 107, an act was passed making certain procedural changes in reference to the Supreme Court. Therein is an affirmation that the powers vested in quarter sessions court under the Act of 1722, supra, should continue as there given. And in January 1777 the colonies having declared themselves free and independent of England, the General Assembly, on January 28, 1777, 1 Sm. L. 429, passed an act whereby, inter alia, the judges or justices of the respective courts were affirmatively given the use and exercise of such authority and jurisdiction as had been exercised by them under prior laws.

We find it significant that the powers and jurisdiction given expressly by the aforementioned enactments to the Supreme Court were not given to the courts of quarter sessions of the peace. This express granting of jurisdiction to the Supreme Court to issue writs of prohibition and the failure of like grant to the quarter sessions court leads us to the conclusion that the courts of quarter sessions of the peace were never invested with authority to issue writs of prohibition.

Accordingly the second question is also answered in the negative.

*Order*

And now, August 20, 1954, we dismiss the rule to show cause why a writ of prohibition should not be granted to Angelina Homka, petitioner: (1) Directing that Magistrate E. David Keiser cease and desist from conducting any further hearing; (2) that petitioner be discharged from any further custody at law, and (3) that the slips of paper and the written statement be suppressed as evidence and be returned to petitioner.

Costs are to be paid by petitioner.